UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KENDEL S.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | CASE NO. C20-5800-MAT<br><br>ORDER RE: SOCIAL SECURITY DISABILITY APPEAL |

Plaintiff proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied Plaintiff's applications for Child Disability Benefits (CDB) and Supplemental Security Income (SSI) after a hearing before an administrative law judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is AFFIRMED.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1985.[1] Plaintiff has limited education and has no past relevant work. (AR 676.) Plaintiff filed an application for CDB on April 16, 2014, and an application for SSI on June 4, 2014, alleging disability beginning September 30, 2003 (AR 635–41, 644–49.) The

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

applications were denied at the initial level and on reconsideration. On August 9, 2017, the ALJ held a hearing and took testimony from Plaintiff, Plaintiff's sister, and a vocational expert (VE). (AR 34–82.) On September 20, 2017, the ALJ issued a decision finding Plaintiff not disabled. (AR 10–33.) Plaintiff timely appealed. The Appeals Council denied Plaintiff's request for review on August 1, 2018 (AR 1–6), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court. By order dated June 11, 2019, the Court found that evidence submitted to the Appeals Council undermined the ALJ's decision and remanded the matter for further administrative proceedings. *See Kendel S. v. Berryhill*, No. 3:18-cv-5729, 2019 WL 2436244 (W.D. Wash. June 11, 2019).

On February 13, 2020, the ALJ held another hearing and took testimony from Plaintiff, a medical consultant, and a vocational expert (VE). (AR 2148–97.) On April 8, 2020, the ALJ issued a decision finding Plaintiff not disabled. (AR 2114–46.) Plaintiff timely appealed. Because this case was previously remanded by this Court, Plaintiff appeals this final decision of the Commissioner to this Court. *See* 20 C.F.R. §§ 404.984, 416.1484.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). "Substantial evidence" means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's

decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

**DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).

At step one, the ALJ must determine whether the claimant is gainfully employed. The ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (AR 2120.)

At step two, the ALJ must determine whether a claimant suffers from a severe impairment. The ALJ found Plaintiff has the following severe impairments: traumatic brain injury, obesity, affective disorder, post-traumatic stress disorder, generalized anxiety disorder, history of attention deficit hyperactivity disorder (ADHD), and history of substance addiction disorder (alcohol). (AR 2121.) The ALJ also found that Plaintiff has the following medically determinable impairments that do not rise to the level of severe: left eye impairment, hypertension, gastroesophageal reflux disease (GERD), abdominal mass, bilateral foot deformities, unilateral right L5 pars defect, colon perforation, rib fractures, left ankle sprain, right knee sprain, Achilles tendonitis, bronchitis, and facial infection. (AR 2121.)

At step three, the ALJ must determine whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Plaintiff's impairments did not meet or equal the criteria of a listed impairment. (AR 2122.)

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found Plaintiff able to perform

ORDER
PAGE - 3

medium work, as defined in 20 C.F.R. §§ 404.1567(c) and 41.967(c), with the following limitations:

> He can understand, remember, and carry out simple routine instructions and tasks consistent with a Specific Vocational Preparation (SVP) of 1 and 2. He can perform work requiring occasional reading (due to reading skills). He can perform work requiring occasional decision-making. He can perform work requiring occasional changes in work setting. He can perform work requiring occasional judgment on the job. He can perform no work with the general public. He can have occasional interaction with co-workers. He can have occasional interact [sic] with supervisors.

(AR 2124.)

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work as here, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of a VE, the ALJ found Plaintiff capable of performing other jobs, such as work as an industrial cleaner, lumber sorter, hand packager. (AR 2137–38.)

Plaintiff argues that the ALJ erred (1) by failing to properly evaluate the impact of Plaintiff's obesity, (2) in his weighing of the medical evidence, and (3) in his consideration of Plaintiff's subjective allegations. Plaintiff requests remand for an award of benefits or, in the alternative, remand for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

**1. Consideration of Obesity**

Plaintiff argues that the ALJ failed to consider the limitations from Plaintiff's obesity when assessing Plaintiff's impairments in combination with his obesity at step three or when crafting the RFC. "The ALJ is required to consider all of the limitations imposed by claimant's impairments, even those that are not severe." *Carmickle v. Comm'r Social Sec. Admin*, 533 F.3d 115, 1164 (9th

ORDER
PAGE - 4

Cir. 2008). According to the social security rules, obesity will be deemed a "severe" impairment "[i]f the person's obesity, alone or in combination with another impairment(s), significantly limits his or her physical or mental ability to do basic work activities." SSR 19-2p. Obesity is not a separately listed impairment; however, the functional limitations caused by obesity, "alone or in combination with another impairment(s), may medically equal a listing." *Id.* Here, the ALJ found obesity to be a severe impairment at step two of the sequential process. (AR 2121.) However, at step three, the ALJ found that Plaintiff's impairments did not meet or equal a listing impairment. (AR 2122–24.)

The ALJ did not err in concluding at step three that Plaintiff's impairments did not meet or equal a listing impairment. According to the regulations, "[o]besity in combination with another impairment(s) may or may not increase the severity or functional limitations of the other impairment." SSR 19-2p. However, the ALJ "will not make general assumptions about the severity or functional effects of obesity combined with another impairment(s)"; rather, the ALJ will "evaluate each case based on the information in the case record." *Id.* Here, the record does not indicate that Plaintiff's obesity exacerbated his other impairments. Plaintiff cites record evidence describing Plaintiff's experiences with fatigue and difficulty sustaining concentration, Pl. Br. at 5; however, the record does not indicate that Plaintiff's fatigue or difficulties with concentration was caused or exacerbated by his obesity. Further, Plaintiff does not specify which listing he believe he meets or equals, nor does Plaintiff set forth any evidence which would support the finding of a listed impairment. 20 C.F.R. § 404.1525(d); *see also Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) ("[A] claimant carries the initial burden of proving a disability.").

Further, the ALJ adequately considered Plaintiff's obesity in his RFC determination. In evaluating a claimant's obesity, the ALJ's RFC assessment must "consider all work-related

ORDER
PAGE - 5

physical and mental limitations, whether due to a person's obesity, other impairment(s), or combination of impairments." SSR 19-02p. Here, the ALJ's RFC assessment limited Plaintiff to medium level work to account for Plaintiff's obesity despite medical evidence that Plaintiff presented normal physical examination findings and at least two consultative medical opinions finding that Plaintiff does not have any physical functional limitations. (AR 2131, 2134–35, citing AR 458, 974–76.) Accordingly, Plaintiff shows no error in the ALJ's consideration of Plaintiff's obesity. *See Burch*, 400 F.3d at 684 ("[Plaintiff] has not set forth, and there is no evidence in the record, of any functional limitations as a result of her obesity that the ALJ failed to consider.").

Even if there was error in the ALJ's consideration of Plaintiff's obesity, this error would be harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (an error is harmless if it is "inconsequential to the ultimate nondisability determination"). The ALJ's assessment of the RFC was overinclusive such that the RFC limited Plaintiff to medium work on account of Plaintiff's obesity despite evidence that Plaintiff lacked physical functional limitations. *See Johnson v. Shalala*, 60 F.3d 1428, 1436 n.9 (9th Cir. 1995) ("[I]f a person can do a job that requires increased concentration, the claimant is also capable of performing work that requires less concentration."). Therefore, any error would be harmless because the RFC accounted for Plaintiff's obesity by including greater physical limitations than medically assessed.

**2. Medical Opinions**

Social security regulations in force at the time Plaintiff filed his applications require the ALJ to give "controlling weight" to treating physician's opinions if they were "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the

other substantial evidence in [the] case record."[2] 20 C.F.R. §§ 404.1527(c)(2), 404.1546(c). Under these regulations, more weight should be given to the opinion of a treating doctor than to a non-treating doctor, and more weight should be given to the opinion of an examining doctor than to a non-examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another doctor, a treating or examining doctor's opinion may be rejected only for "'clear and convincing'" reasons. *Id*. (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining doctor's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830–31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

With these regulations and considerations in mind, the Court proceeds to its analysis of the medical evidence in this case.

A. <u>Dr. Daniel Neims, Psy.D.</u>

Dr. Neims performed several psychological evaluations for Plaintiff between March 2011 and September 2018. (AR 782–817, 1008–25, 2788–94.) In 2011, Dr. Neims assessed Plaintiff with severe limitations in Plaintiff's ability to communicate and perform effectively in a work setting with public contact and marked limitations in his ability to communicate and perform effectively in a work setting with limited public contact. (AR 784.) In 2016, Dr. Neims assessed Plaintiff with marked limitations in his ability to make simple work-related decisions; communicate, perform effectively, and maintain appropriate behavior in a work setting; and complete a normal work day and work week without interruptions from psychologically based symptoms. (AR 1009–10.) In 2018, Dr. Neims assessed Plaintiff with severe limitations in his

---

[2] In 2017, the Social Security Administration amended its regulations and removed the "controlling weight" requirement for all applications filed after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c, 416.920c. Because Plaintiff's claims were filed before March 27, 2017, the new rules are not applicable to Plaintiff's case.

ability to communicate and perform effectively and maintain appropriate behavior in a work setting and marked limitations in his ability to adapt to changes in a work setting, make simple work-related decisions, ask simple questions or request assistance, complete a normal work day and work week without interruptions from psychologically based symptoms, and set realistic goals and plan independently. (AR 2789–90.) Dr. Neims found moderate or none/mild limitations in all other areas. (AR 784–85, 1009–10, 2789–90.)

The regulations applicable to Plaintiff's case require the ALJ to weigh medical opinions regardless of the source. 20 C.F.R. §§ 404.1527(c), 416.927(c). The ALJ generally gives more weight to the medical opinion of an examining doctor than to a non-examining doctor; however, in deciding the weight to give to any medical opinion, the ALJ considers factors such as the examining relationship, the treatment relationship, supportability, consistency, specialization, and other factors which tend to support or contradict the opinion, including the source's understanding of the agency's disability program and evidentiary requirements, and the source's familiarity with the case record. *Id.* The ALJ found Dr. Neims' assessments regarding Plaintiff's marked limitations "inconsistent with the record as a whole" and gave partial weight to Dr. Neims' opinions. (AR 2133.)

Plaintiff argues that the ALJ improperly rejected Dr. Neims' assessments based on contradictions between Dr. Neims' assessments and the testimony of Dr. Nancy Winfrey, Ph.D., a non-examining doctor, and improperly affording Dr. Winfrey's testimony more weight. Pl. Br. 11–12. "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Ryan v. Comm'r of Social Sec. Admin.* 528 F.3d 1194, 1198 (9th Cir. 2008) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). Here, the ALJ offered specific

ORDER
PAGE - 8

and legitimate reasons for rejecting the marked limitations assessed by Dr. Neims. The ALJ found that Dr. Neims' assessment was inconsistent with Plaintiff's performances during evaluations and treatment visits (AR 2133), which the ALJ previously found "revealed only some deficits in memory, fund of knowledge, attention, concentration, abstract reasoning, insight, and judgment." (AR 2131.) Further, the ALJ found that Dr. Neims' assessments were inconsistent with evidence that Plaintiff's symptoms and functioning improved and stabilized with regular treatment. (AR 2131, 2133.) Finally, the ALJ cited inconsistencies with evidence showing Plaintiff's ability to work on cars and engage in social activities, including vacationing at an amusement park. (AR 2132, 2133.) Accordingly, the ALJ gave specific and legitimate reasons for giving Dr. Neims' assessment of marked limitations only partial weight.

Even if the ALJ did err in evaluating Dr. Neims' assessment of marked limitations, this error is harmless because the RFC accounted for the limitations assessed by Dr. Neims. *Molina*, 674 F.3d at 1115 (an error is harmless if it is "inconsequential to the ultimate nondisability determination"). Specifically, the RFC limited Plaintiff to performing no work with the general public, having occasional interaction with co-workers and supervisors, and requiring occasional decision-making, changes in work setting, and judgment. (AR 2124.) The ALJ is responsible for "translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Social Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)). The ALJ may incorporate the opinions of a physician by assessing RFC limitations entirely consistent with but not identical to limitations assessed by the physician. *Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1222–23 (9th Cir. 2010). Accordingly, any error is harmless because the RFC's limitations were consistent with the limitations assessed by Dr. Neims.

ORDER
PAGE - 9

B. <u>Dr. Nancy Winfrey, Ph.D.</u>

Dr. Winfrey, an impartial medical expert, reviewed the medical record and testified at the February 2020 hearing. (AR 2135, 2160–84.) Dr. Winfrey testified that Plaintiff's diagnoses of PTSD, generalized anxiety disorder with a qualifier of panic attacks, and major depressive disorder are supported by the record and that the diagnoses for bipolar II disorder and mania are unsupported. (AR 2160.) Dr. Winfrey further testified that Plaintiff's traumatic brain injury had a physical diagnosis but that it is not a diagnosis from the Diagnostic and Statistical Manual of Mental Disorders (DSM). (AR 2164.) Further, regarding Plaintiff's brain injury, Dr. Winfrey testified that Plaintiff left the hospital and rehabilitation within a month of his accident. (AR 2168.) For the timeframe up to 2007, when Plaintiff turned 22, Dr. Winfrey testified that only Plaintiff's ADHD would be in effect and these diagnoses did not meet or equal a listed impairment. (AR 2163, 2165.) Dr. Winfrey noted that there are no records after October 2003, suggesting that Plaintiff was not seeking treatment. (AR 2165.) For the timeframe April 2014 forward, Dr. Winfrey testified that Plaintiff's impairments would not meet or equal a listing. (AR 2165–66.) Dr. Winfrey rated Plaintiff as moderate in his ability to understand, remember, apply information, interact with others, concentrate, persist, maintain pace, and adapt or manage himself. (AR 2169–72.) Dr. Winfrey opined that Plaintiff would be able to maintain attendance and intellectually function at work and would be able to function at a job that has no contact with the public. (AR 2178.)

The regulations applicable to Plaintiff's case require the ALJ to weigh medical opinions regardless of the source. 20 C.F.R. §§ 404.1527(c), 416.927(c). In deciding the weight to give to any medical opinion, the ALJ considers factors such as the examining relationship, the treatment relationship, supportability, consistency, specialization, and other factors which tend to support or

ORDER
PAGE - 10

contradict the opinion, including the source's understanding of the agency's disability program and evidentiary requirements, and the source's familiarity with the case record. *Id.* The ALJ found that Dr. Winfrey was a clinical psychologist, had knowledge of the Social Security Administration disability program, and had examined the Plaintiff's case record. (AR 2136.) The ALJ further found that Dr. Winfrey's testimony was consistent with the overall medical evidence of record. (AR 2136.) Specifically, the ALJ found that Dr. Winfrey's testimony was consistent with Plaintiff's limited education, traumatic brain injury, mental health symptoms, including Plaintiff's social anxiety, the medical evidence showing Plaintiff's symptoms and functioning improved with consistent mental health treatment, and Plaintiff's "demonstrated strong memory, attention, concentration, insight, and judgment during regular treatment visits and evaluations." (AR 2136.) Finally, the ALJ found that Dr. Winfrey's testimony was consistent with evidence of Plaintiff working on cars, socializing with friends, and vacationing at an amusement park. (AR 2136.) Accordingly, the ALJ afforded Dr. Winfrey's testimony great weight. (AR 2136.)

Plaintiff argues that the ALJ erred by giving Dr. Winfrey's opinion great weight because Dr. Winfrey's testimony was contradicted by the opinion of two examining psychologists, including Dr. Neims, three reviewing psychologists, and Plaintiff's treating therapists, who, Plaintiff asserts, arrived at contrary conclusions and assessed greater limitations than found by Dr. Winfrey. Pl. Br. at 11. Social security regulations provide that an ALJ may give weight to a medical opinion considering the sources' specialty, knowledge of the claimant's record, and/or familiarity with the agency's programs. 20 C.F.R. §§ 404.1527(c)(5)–(6), 416.927(c)(5)–(6). Additionally, the ALJ may assign more weight to an opinion, including a non-examining opinion, that supports and/or is consistent with the record as a whole. 20 C.F.R §§ 404.1527(c)(3)–(4), 416.927(c)(3)–(4); *see also Thomas*, 278 F.3d at 957 ("The opinions of non-treating or non-examining physicians

may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.").

Here, the ALJ gave specific and legitimate reasons for assigning great weight to Dr. Winfrey's testimony considering supportability and consistency factors, Dr. Winfrey's specialization, and Dr. Winfrey's familiarity with the agency's disability programs, evidentiary requirements, and Plaintiff's case record. (AR 2135–36.) Plaintiff offers an alternative interpretation of the medical evidence; however, the ALJ's interpretation is at least equally rational and not properly disturbed. *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). Additionally, as described in the previous section, the ALJ independently evaluated Dr. Neims' opinion and gave specific and legitimate reasons for giving Dr. Neims' opinion partial weight. Accordingly, the Court finds that the ALJ did not err by affording great weight to Dr. Winfrey's testimony nor did the ALJ err by giving Dr. Winfrey's opinion greater weight than Dr. Neims' opinion.

C. <u>Kassandra Sparkmon, MA</u>

Ms. Sparkmon completed an adult intake assessment for Plaintiff on February 17, 2017, at Good Samaritan Behavioral Healthcare to reestablish care. (AR 1083–91.) During the assessment, Plaintiff endorsed being restless/agitated, experiencing several mood and anxiety symptoms, and experiencing moderate impairments in concentration/attention and short-term memory. (AR 1084–85.) The intake assessment did not include any medical diagnoses or opinions regarding Plaintiff's functional limitations.

Plaintiff argues that the ALJ erred by failing to weigh Ms. Sparkmon's assessment. The regulations applicable to Plaintiff's case require the ALJ to weigh medical opinions regardless of the source. 20 C.F.R. §§ 404.1527(c), 416.927(c). Here, however, Ms. Sparkmon neither provided

a medical opinion nor assessed any functional limitations. Accordingly, the ALJ did not err by not weighing Ms. Sparkmon's intake assessment. *See, e.g., Turner*, 613 F.3d at 1223 (ALJ not required to provide clear and convincing reasons to reject physician's statement when statement did not assess any limitations).

### D. Other Medical Opinions

Plaintiff summarizes several other medical opinions in the record and describes the weight the ALJ afforded them. Pl. Br. at 6–9. However, Plaintiff offers no specific challenge to the ALJ's assessment of these opinions. An appellate court "will not review any claims that were not actually argued in appellant's opening brief. Rather, we 'review only issues which are argued specifically and distinctly in a party's opening brief.'" *Indep. Towers of Wash. V. Washington*, 350 F.3d 925, 929 (9th Cir. 2003); *see also Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998) ("[A]t all times, the burden is on the claimant to establish her entitlement to disability insurance benefits."). Therefore, Plaintiff has shown no error in the ALJ's assessment of these opinions.

### 3. Plaintiff's Symptom Testimony

Plaintiff contends that the ALJ improperly evaluated Plaintiff's testimony. The rejection of a claimant's subjective symptom testimony[3] requires the provision of specific, clear, and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136–37 (9th Cir. 2014) (citing *Molina*, 674 F.3d at 1104; *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.

---

[3] Effective March 28, 2016, the Social Security Administration (SSA) eliminated the term "credibility" from its policy and clarified the evaluation of a claimant's subjective symptoms is not an examination of character. SSR 16-3p. The Court continues to cite to relevant case law utilizing the term credibility.

ORDER
PAGE - 13

1996). An ALJ may reject a claimant's symptom testimony when it is contradicted by the medical evidence, but not when it merely lacks support in the medical evidence. *See Carmickle*, 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting a claimant's subjective testimony."); *Burch*, 400 F.3d at 681 ("[L]ack of medical evidence cannot form the sole basis for discounting pain testimony.").

Plaintiff alleges that he is unable to work due to anxiety, having a very hard time being around people, and that his brain injury makes it difficult to follow/read directions. (AR 666.) Plaintiff also testified that he experiences loss of interest in activities and difficulty maintaining attention and concentration. (AR 52–53.) The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the claimant's alleged symptoms." (AR 2125.) However, the ALJ found that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not consistent with the medical evidence and other evidence in the record." (AR 2125.)

The ALJ reasonably concluded that the evidence in the record was inconsistent with Plaintiff's allegations regarding his limitations. Specifically, the ALJ found that evidence in the record showing that Plaintiff was able to go out alone and shop for necessities, socialize with friends at least two times per month, engage in activities like playing pool or cards, visit the beach and Seattle, attend a car show, and vacation at an amusement park undermined Plaintiff's allegations regarding his difficulties being around people and out in public. (AR 2132.) The ALJ found that evidence that Plaintiff is able to work on cars, spend time on the internet, and play pool or cards with his friends undermined Plaintiff's allegations regarding his difficulties maintaining pace and completing tasks. (AR 2132.) The ALJ also found that evidence that Plaintiff regularly engaged in hobbies like working on cars undermined Plaintiff's allegations regarding his

ORDER
PAGE - 14

experiences with loss of interest in activities. (AR 2132.) Finally, the ALJ found that the evidence regarding Plaintiff's alcohol use was inconsistent with Plaintiff's testimony denying a period of heavy alcohol use. (AR 61, 2133.) Accordingly, the ALJ found that these inconsistencies diminished the reliability of Plaintiff's allegations and demonstrated a level of functioning in excess of Plaintiff's claimed limitations. (AR 2132.) An ALJ may reject subjective testimony upon finding it contradicted by or inconsistent with the medical record. *Carmickle*, 533 F.3d at 1161. Here, the ALJ offered "specific, clear and convincing" reasons for finding Plaintiff's testimony was inconsistent with the medical evidence in the record and, therefore, did not err by rejecting Plaintiff's testimony about the severity of his limitations. *Molina*, 674 F.3d at 1112 ("[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct . . . .").

Further, the ALJ found that Plaintiff made inconsistent statements regarding his treatment history. Specifically, Plaintiff testified that he had been receiving mental health treatment periodically due to issues with his medical insurance (AR 49); however, the ALJ found that the evidence showed a history of noncompliance with mental health treatment. (AR 2133.) The ALJ may discount a claimant's subjective complaints because of "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Additionally, an ALJ properly considers prior inconsistent statements in evaluating a claimant's testimony. *See id.* The ALJ thus reasonably discounted Plaintiff's testimony on account of Plaintiff's noncompliance with mental health treatment.

The ALJ thus reasonably concluded that the medical evidence and Plaintiff's prior statements were inconsistent with Plaintiff's allegations regarding his limitations. 20 C.F.R. §§

ORDER
PAGE - 15

404.1529(c)(4), 416.929(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence . . . ."). The ALJ's findings are supported by substantial evidence.

## CONCLUSION

For the reasons set forth above, this matter is AFFIRMED.

DATED this 10th day of August, 2021.

MARY ALICE THEILER
United States Magistrate Judge

ORDER
PAGE - 16